## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TIMOTHY WALLACE,

        Plaintiff,

v.                               Case No. 3:17-cv-214-J-32JBT

JULIE JONES, et al.,

        Defendants.

_____

## <u>ORDER</u>

Plaintiff, a prisoner proceeding pro se, filed this civil rights case on February 23, 2017 (Doc. 1). He is currently proceeding on an Amended Complaint (Doc. 41) (Amended Complaint) in which he names the following Defendants: (1) Julie Jones, Secretary of the Florida Department of Corrections (DOC); (2) Diane Andrews, Warden of Union Correctional Institution (UCI); (3) S.B. Rossiter, Assistant Warden of UCI; (4) Gary Grainger, Mail Room Supervisor at UCI; (5) K. Barnett, Mail Room Official; and (6) Sheila Thornton, Mail Room Official. Plaintiff names all Defendants in their individual capacities for a denial of access to the courts based on ten alleged incidents of mail tampering. He seeks compensatory and punitive damages.

Before the Court are two Motions to Dismiss the Amended Complaint: Defendants Grainger, Barnett, and Thornton filed a Motion to Dismiss (Doc. 46) (Grainger Motion) on October 2, 2017; and Defendants Jones, Andrews, and Rossiter filed an Amended Motion to Dismiss (Doc. 50) (Jones Motion) on October 25, 2017

(collectively, Motions).[1] Plaintiff filed Responses in Opposition[2] (Docs. 48, 51) (Responses). The Motions are ripe for review.

## II. Amended Complaint[3]

Plaintiff alleges that Defendants Grainger, Barnett, and Thornton (mailroom Defendants) each, on different occasions between July 21, 2014 and August 17, 2015, interfered with his legal mail. He identifies ten dates on which he submitted to one of the mailroom Defendants legal mail addressed to one of five different attorneys in his attempts to seek representation. According to Plaintiff, the five attorneys did not receive his legal mail. Thus, he concludes, the mailroom Defendants "intercepted, read, withheld, and destroyed" his mail. See Amended Complaint at 5, 9, 12.

Plaintiff states that he names Defendants Jones, Andrews, and Rossiter (supervisory Defendants) "because of their . . . positions" as supervisors of the mailroom Defendants. Id. at 19. Plaintiff alleges that, because he filed grievances

---

[1] The Motions will be cited as "Grainger Motion" (Doc. 46) and "Jones Motion" (Doc. 50). Plaintiff's Responses will be cited as "Pl. Grainger Resp." (Doc. 51) and "Pl. Jones Resp." (Doc. 48).

[2] Plaintiff responded to Jones, Rossiter, and Andrews' original Motion to Dismiss (Doc. 45). The Amended Motion to Dismiss (Doc. 50) is the same as the original except for correction of a "scrivener's error." In the original Motion, Defendant Rossiter was incorrectly identified as Defendant Grainger. See Jones Motion at 1 n.1. In the Response, Plaintiff correctly addresses his claims against Defendant Rossiter. See Pl. Jones Resp. at 8, 19, 21.

[3] In considering a motion to dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015).

complaining of the mail-tampering incidents, the supervisory Defendants had "notice of the pattern of violations [by the mailroom Defendants] . . . but . . . failed to correct or intervene," which resulted in a custom or policy to permit such violations to occur. Id. at 22.

Due to the interference with his legal mail, Plaintiff claims that he was not able to "get his criminal case filed to the court." Id. at 20. He alleges he suffers "monetary loss, physical pain and suffering, depress[ion], stress, headaches physical injuries impairment [sic], personal humiliation and mental anguish." Id. at 24. In his "Statement of Claim," Plaintiff alleges violations of the First, Fifth, Sixth, and Fourteenth Amendments for a denial of access to the courts and to attorneys. See id. at 26. He also asserts that Defendants acted with "gross negligence [sic] conduct when they denied Plaintiff serious needs of access to the attorneys and court from their unprofessional conduct and deficient performance." Id.

### III. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Pleadings submitted by pro se plaintiffs "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Nevertheless, courts are under no duty to "re-write" a plaintiff's complaint to find a claim. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

The mailroom Defendants argue that Plaintiff failed to exhaust his administration remedies, as required under the Prison Litigation Reform Act (PLRA), with respect to eight of the ten instances of alleged mail tampering: December 22, 2014, January 15, 2015, March 19, 2015, April 5, 2015, April 9, 2015, April 20, 2015, June 8, 2015, and August 17, 2015. See Grainger Motion at 4. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted)).

Because exhaustion of administrative remedies is an affirmative defense, a

defendant bears the burden to show a plaintiff's failure to exhaust. See Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted).

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

Id. (citing Bryant, 530 F.3d at 1373-74). Second, "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." Whatley, 802 F.3d at 1209.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id. at 90. The DOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must correctly complete a three-step process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.006. If the

matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the DOC. See Fla. Admin. Code r. 33-103.007.

Florida Administrative Code rule 33-103.011 provides time frames for submission of grievances under each step. Informal grievances must be "received within 20 days of when the incident or action being grieved occurred"; and formal grievances and appeals to the Office of the Secretary must be "received no later than 15 days from the date on which" the prior grievance was responded to. Grievances "may be returned to [an] inmate without further processing" for various reasons, including a failure to timely submit the grievance. See Fla. Admin. Code r. 33-103.014(1). If a grievance is returned without action, the inmate has failed to "properly" complete the grievance process. See Bryant, 530 F.3d at 1379 (holding that the prisoner failed to exhaust his administrative remedies because he did not timely submit an appeal and, therefore, did not "properly take each step" of the relevant administrative procedures).

Under the first step of the Turner analysis, the Court is unable to conclude that Plaintiff has failed to exhaust his administrative remedies because Plaintiff states that he has. See Pl. Grainger Resp. at 8, 9. Thus, the Court proceeds to the second step of the Turner analysis. To resolve a factual dispute about exhaustion, a district court may "consider facts outside of the pleadings . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (footnotes omitted).

The mailroom Defendants provide the declaration of Lawanda Williams Sanders (Sanders Dec.), an Administrative Assistant with the DOC, working in the Bureau of Policy Management and Inmate Appeals (Bureau); a DOC grievance log of the grievance appeals filed by Plaintiff between May 1, 2014, and October 31, 2015; and grievance documents for the relevant time periods (Def. Grievance Docs.) (Doc. 46-1). According to Ms. Sanders,

> FDOC's records show that Mr. Wallace's grievance appeals, with the Bureau . . . related to his legal mail on December 22, 2014 (#15-6-27989); March 19, 2015 (#15-6-27987); April 9, 2015 (#15-6-27986); and June 8, 2015 (#15-6-26033) were all returned without action. FDOC's records show that Mr. Wallace did not file a grievance appeal, with the Bureau . . . from his Grievance to the Warden, #1508-213-249, concerning his legal mail on April 20, 2015. FDOC's records show that Mr. Wallace did not file a grievance appeal, with the Bureau . . . for any issues related to mailing legal documents on January 15, 2015, April 5, 2015, or August 7,[4] 2015.

See Sanders Dec. ¶¶ 3-5 (internal paragraph numbering omitted). The Court also reviewed grievance records Plaintiff filed with his original complaint (Docs. 1-1 through 1-12) (Pl. Grievance Ex.).

The Court has thoroughly reviewed the grievance records, and it appears Plaintiff has indisputably failed to exhaust his administrative remedies with respect to the June 8, 2015 mail-tampering incident. Plaintiff filed grievances at each of the three steps in the process to complain of the June 8th incident; however, he did not

---

[4] This appears to be a scrivener's error. The August 2015 date alleged by Plaintiff is the 17th. See Complaint at 6.

timely file his appeal to the Office of the Secretary (grievance log #15-6-26033), resulting in the Office returning his appeal without action. See Pl. Grievance Ex. H (Doc. 1-8). Because Plaintiff did not "properly" follow the administrative grievance procedures, he has not exhausted his administrative remedies with respect to this one alleged incident. See Bryant, 530 F.3d at 1379

With respect to the other seven disputed incidents, however, the mailroom Defendants have not carried their burden to show Plaintiff failed to exhaust his administrative remedies. Plaintiff's formal grievances to the Warden for the December 22, 2014, March 19, 2015, and April 9, 2015 incidents were returned without action as untimely under Chapter 33-103.014(1)(e). See Def. Grievance Docs. at 7, 13, 19. By the Court's calculation, Plaintiff did timely submit these formal grievances. The relevant administrative rule provides that a grievance may be returned without action if the inmate fails to submit the formal grievance within fifteen calendar days "of the date on which the incident or action being complained about occurred, if an informal grievance was not filed . . . ." See Fla. Admin. Code r. 33-103.014(1)(e) (emphasis added). It appears that Plaintiff did, in fact, file informal grievances for the three incidents, each of which an official responded to on the merits. See Def. Grievance Docs. at 13-15; 19-21; see also Pl. Grievance Ex. B (Doc. 1-2). According to the dates on the grievance documents, Plaintiff filed each formal grievance within fifteen calendar days of receipt of the informal grievance response, in compliance with Chapter 33-103.011(b)1. See id. Plaintiff completed the third step of the grievance process by filing an appeal to the Office of the Secretary concerning the December 22,

2014, March 19, 2015, and April 9, 2015 incidents, all of which were returned without action because of Plaintiff's non-compliance at the institutional level. See Def. Grievance Docs. at 5-6, 11-12, 17-18. Because Plaintiff completed the three-step grievance process to grieve these three incidents, he exhausted his administrative remedies.

Whether Plaintiff exhausted his administrative remedies as to the remaining four disputed incidents, January 15, 2015, April 5, 2015, April 20, 2015, and August 17, 2015, is less clear. The grievance records provided by the DOC and Plaintiff do not include or reference any grievance filings for January 15, 2015, April 5, 2015, or August 17, 2015. However, in response to the mailroom Defendants' Motion to Dismiss, Plaintiff claims that he did file grievances for these incidents, saying that he placed them "in the inmate grievance box at the institution," but that "he did not receive them back from the Bureau." Pl. Grainger Resp. at 8. Plaintiff makes a similar claim with respect to the April 20, 2015 incident. As to that incident, Plaintiff filed grievances at the first two steps, but he failed to submit a final appeal to the Bureau. See Def. Grievance Docs. at 29-31; Pl. Grievance Ex. J (Doc. 1-10). Thus, the mailroom Defendants conclude, he did not complete the three-step process. See Sanders Dec. ¶ 4. According to Plaintiff, however, he did submit an appeal for the April 20, 2015 incident, but "he did not receive some of his grievance[s] back after he appeal[ed] them." Id. at 8-9.

Given how unclear the record is on the exhaustion issue, the Court declines to find that Plaintiff failed to exhaust his administrative remedies with respect to the

January 15, 2015, April 5, 2015, April 20, 2015, and August 17, 2015 incidents. Thus, the Grainger Motion is due to be granted with respect to one mail-tampering incident—that occurring on June 8, 2015—but is due to be denied as to the other seven disputed incidents.

### B. Claim for Denial of Access to Courts Against the Mailroom Defendants

Regardless of whether Plaintiff properly grieved all ten mail-tampering incidents, he has failed to plausibly allege an access-to-courts claim. It is well-established that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977); see also Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."). To state a claim for denial of access to the courts, a plaintiff must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349-50 (1996); Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006). "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by . . . an official's action." Barbour, 471 F.3d at 1225 (citations omitted). Therefore, "the plaintiff must identify within his complaint, a 'nonfrivolous, arguable underlying claim.'" Id. at 1226 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Additionally, the plaintiff must show that the underlying nonfrivolous claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action. Lewis,

518 U.S. at 354-57; <u>Cranford v. Nev. Dep't of Corr.</u>, 398 F. App'x 540, 546-47 (11th Cir. 2010).

Here, Plaintiff alleges that he was not able to get "his criminal case file[d] to the court." Amended Complaint at 20. In his Amended Complaint, Plaintiff does not provide factual detail as to the nature of the "criminal case" to which he refers. In a Memorandum Plaintiff filed in support of his claims (Doc. 42) (Pl. Mem.), he adds that he "had a legitimate case that he could prove his innocence before the court, but his legal mail never made it to the court or attorney because of the Defendants['] . . . wrong[]doing." Pl. Mem. at 21. He further says that "his criminal [case] will be delayed in the court because all his legal documents to this case have been intercepted and destroyed by the mail room officials."[5] <u>Id.</u> Because he did not have his legal documents, he explains, he was unable to "file motions to the trial court concerning his criminal case." <u>Id.</u> at 25.

Plaintiff has failed to adequately allege a legally-sufficient injury to state an access-to-courts claim under the First, Fifth, or Fourteenth Amendments. The few allegations he makes do not show that Defendants' alleged conduct prevented him from pursuing a non-frivolous legal claim related to a direct appeal of a criminal conviction, a collateral attack on his conviction, or a civil rights action. The Court takes

---

[5] The legal documents Plaintiff identifies as being destroyed are the following: "trial transcript, post-conviction motions, motion to correct an illegal sentence, arrest report, indictment charging document, [] discovery report, [and] habeas corpus documents." Pl. Mem. at 25.

judicial notice of the Fourth District Court of Appeal's Mandate, issued on November 7, 2008, of the court's per curiam opinion affirming Plaintiff's state court criminal conviction. See Grainger Motion Ex. 2 (Doc. 46-2) at 1; see also Wallace v. State, 993 So. 2d 536 (Table) (Fla. 2008) (unpublished disposition). In Plaintiff's Response to the Grainger Motion, he admits that his "direct appeal was resolved," but states that he was attempting to obtain an attorney "to file motions in the court [o]n his behalf because there were errors made in his jury trial concerning his criminal case." Pl. Grainger Resp. at 10.

While Plaintiff's direct appeal was finally adjudicated in 2008, Plaintiff continued to file motions, appeals, and writs, all of which were dismissed. Of note, on November 20, 2013, the Fourth District Court of Appeal affirmed a trial court order barring Plaintiff from additional pro se filings because he "had filed several improperly successive motions which were meritless." See Wallace v. State, 127 So. 3d 707 (Mem) (Fla. 4th DCA 2013) (per curiam). The appellate court docket shows that the last court activity related to Plaintiff's appeals occurred on February 11, 2014, before the first alleged mail-tampering incident occurred—July 21, 2014. See Wallace v. State, 135 So. 3d 291 (Table) (Fla. 2014) (unpublished disposition) (dismissing the case for lack of jurisdiction). Thus, whatever the content of the letters Plaintiff was attempting to send to the lawyers was, it does not meet the requirements of an access-to-courts claim.

Because Plaintiff has failed to allege an "actual injury" resulting from the ten mail-tampering incidents, the mailroom Defendants' Motion is due to be granted as to

the access-to-courts claim.[6]

## C. Supervisor Liability

Since the Plaintiff has failed to state a claim against the mailroom Defendants, there is no basis for supervisor liability against the supervisory Defendants. See Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (granting summary judgment for two supervisory defendants because plaintiff failed to demonstrate "an underlying constitutional violation" committed by the subordinate employees). See also Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008) ("Without an underlying violation of [plaintiff's] constitutional rights, [the supervisor] cannot be liable . . . ."). Thus, the supervisory Defendants' Motion is due to be granted and they are due to be dismissed.

## D. Negligence Claim

To the extent Plaintiff attempts to assert a negligence claim, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officers. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause,

---

[6] While Defendants do not separately address Plaintiff's assertion of a Sixth Amendment violation, the Court finds that Plaintiff's allegations do not implicate Sixth Amendment protections. The "right to effective counsel under the Sixth Amendment extends only to criminal matters." Taylor v. Sterrett, 532 F.2d 462, 472 (5th Cir. 1976) (citing Wolff v. McDonnell, 418 U.S. 539, 576 (1974)) ("Any infringement of the right to effective counsel by the reading of an inmate's correspondence with an attorney is included within a concurrent abridgment of the right of access to the courts."). As noted, and as Plaintiff acknowledges, Plaintiff's "direct appeal was resolved." Thus, even accepting as true that the mailroom Defendants read mail intended for attorneys Plaintiff hoped would undertake his representation, any such attorney-client relationship would not have been in connection with his underlying criminal case.

whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Consequently, any allegedly negligent conduct of which Plaintiff complains does not rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. See Cannon v. Macon Cty., 1 F.3d 1558, 1563 (11th Cir. 1993), opinion modified on reh'g, 15 F.3d 1022 (11th Cir. 1994) ("[N]egligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property." (citations omitted)).[7]

Accordingly, it is

**ORDERED:**

1. Defendants Grainger, Barnett, and Thornton's Motion to Dismiss the Amended Complaint (Doc. 46) and Defendants Jones, Andrews, and Rossiter's Amended Motion to Dismiss the Amended Complaint (Doc. 50) are **GRANTED** to the extent that this case is **DISMISSED with prejudice**.[8] Generally, a pro se Plaintiff should be provided an opportunity to amend his complaint "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted."

---

[7] To the extent Plaintiff is attempting to allege a separate state law negligence claim, the Court declines to exercise supplemental jurisdiction over it.

[8] Because the Court finds that Plaintiff fails to state a claim for relief against all Defendants, the Court does not address the Defendants' additional arguments raised in their respective Motions. All Defendants argue that Plaintiff's state tort claim is barred by Florida and Federal statutes, and Plaintiff failed to allege a physical injury as required under 42 U.S.C. § 1997e(e). See Grainger Motion at 8, 11; Jones Motion at 8, 10. The mailroom Defendants also assert that they are entitled to qualified immunity. See Grainger Motion at 10.

Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc). However, if an amendment would be futile, such as where a plaintiff can "prove no set of facts" that would entitle him to relief, id., the Court may dismiss the case with prejudice, Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Any effort by Plaintiff to further amend his complaint premised on these facts would be futile. Accordingly, this case is dismissed **with prejudice**.

2.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of August, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-6

c:    Timothy Wallace
      Counsel of Record